

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2006

# In Re: Midwest

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2489

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Midwest " (2006). *2006 Decisions.* Paper 1462.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1462

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-2489

———

IN RE: MIDWEST PORTLAND CEMENT COMPANY,
Debtor

MARK L. GLOSSER, Trustee
KENTS RUN PARTNERSHIP, LTD.

v.

MAYSVILLE REGIONAL WATER DISTRICT

Kents Run Partnership, Ltd.,
Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-01760)
District Judge: Honorable David S. Cercone

———

Submitted Under Third Circuit LAR 34.1(a)
February 28, 2006

Before: SLOVITER, FUENTES, Circuit Judges, and BRODY,[*] District Judge

(Filed March 9, 2006)

OPINION

———

[*] Hon. Anita B. Brody, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge.

At issue is whether a contract entered into by the debtor is executory and therefore one that the bankruptcy trustee may assume and assign under 11 U.S.C. § 365. Both the Bankruptcy Court and the District Court held that the contract is not executory.

## I.

The relevant facts are undisputed, well-known to the parties, and were set forth in full in the opinions below. We thus summarize for purposes of this appeal. On March 15, 1993, Midwest Portland Cement Company (Midwest), and appellee Maysville Regional Water Department (Maysville), entered into a contract for the sale of real property located in Muskingum County, Ohio. Midwest sold to Maysville: (i) the land surrounding a water source that Maysville owns called Frazier Quarry; and (ii) a separate property called Lake Isabella. Each party also secured an easement in the transaction. Midwest retained an easement through Maysville's property so that it could construct a conveyor belt and storage facility for limestone that it mined from an adjacent property where Midwest had mining rights. That adjacent property is owned by the appellant in this proceeding, Kents Run Partnership Ltd. (Kents Run). Maysville, in turn, obtained an easement to run waterlines from the Lake Isabella property across certain adjacent property that Midwest still owned. The parties recorded a deed on December 22, 1993, reflecting the sale. Maysville made full payment under the contract.

On May 5, 1997, an involuntary petition placed Midwest in Chapter 7 bankruptcy proceedings. In 2002, the Bankruptcy Court approved a settlement agreement among

2

Midwest's Bankruptcy Trustee (the Trustee), Kents Run, and two other companies that, like Kents Run, were claimants in the bankruptcy proceedings. As relevant here, the settlement agreement called for the Trustee to seek approval from the Bankruptcy Court to assume the 1993 contract with Maysville on the ground that the contract is "executory." See 11 U.S.C. § 365(a) ("[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."). If approved, the Trustee would then assign the executory contract to Kents Run.[1] Kents Run, it appears, is primarily interested in Midwest's easement to construct a conveyor belt and storage facility for stones mined from Kents Run's property. At the time of the bankruptcy petition, Midwest had yet to develop its easement.

The Bankruptcy Court denied the Trustee permission to assume the 1993 contract. It agreed with Maysville that the contract is not "executory" within the meaning of § 365 because the parties' sale of property became final and complete upon recording their deed, and neither Midwest nor Maysville has remaining obligations that would constitute a material breach if unperformed. The Court also concluded that the easement granted to Midwest is personal and non-assignable. The District Court affirmed. Kents Run P'ship, Ltd. v. Glosser, 323 B.R. 408 (W.D. Pa. 2005). It too held that the contract is not executory and concluded, alternatively, that Midwest's easement is non-assignable.

---

[1]A trustee has authority to assign an executory contract, § 365(f)(1), but must first assume the contract, § 365(f)(2).

Kents Run filed this appeal.[2] We have jurisdiction under 28 U.S.C. § 158(d). See

Matter of Taylor, 913 F.2d 102, 104 (3d Cir. 1990). The question whether the parties'

contract is executory under § 365 is a legal one subject to de novo review. In re Sunterra

Corp., 361 F.3d 257, 263 (4th Cir. 2004).

## II.

Kents Run contends that as of the date of the bankruptcy petition, there were five

unperformed obligations by Midwest and Maysville concerning the two easements

conveyed in the 1993 sale. It contends that (1) Midwest must "more particularly

describe" its easement after it constructs the conveyor belt and storage facility; (2)

Maysville must "more particularly describe" its easement after constructing the

waterlines; (3) Midwest must make any conveyance of the property over which the

waterlines run subject to Maysville's easement; (4) Maysville must record an appropriate

written document regarding the portion of Midwest's easement that crosses over Frazier

Quarry; and (5) Midwest must file a document in the chain of title to provide subsequent

purchasers with notice of Maysville's easement.[3] According to Kents Run, the District

---

[2]The Trustee has not appealed the District Court's judgment, nor was the Trustee required to pursue an appeal under the terms of the approved settlement agreement between the Trustee and Kents Run. App. at 48. Notably, the Trustee and Kents Run did not make the validity and enforceability of their settlement contingent or conditional upon the result of the present proceeding. Id.

[3]In the District Court, Kents Run also cited Midwest and Maysville's obligation to limit use of the easements to the

4

Court erred in failing to deem the 1993 contract executory based on these unperformed obligations. We disagree.

This court has defined an executory contract for purposes of § 365 as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989) (citations omitted); see also In re Columbia Gas Sys. Inc., 50 F.3d 233, 239 (3d Cir. 1995) ("[U]nless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365."). "The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed." In re Columbia Gas, 50 F.3d at 240.

The parties agree that the materiality of any unperformed obligation under the 1993 contract must be evaluated under Ohio law. See also id. at 239 n.10. Ohio courts generally look to the Restatement (Second) of Contracts, which presents five factors as significant in determining whether a failure to render or to offer performance is material:

> (a) the extent to which the injured party will be deprived of

---

particular purposes for which they were granted. The District Court rejected that ground because "any use of the property interest contrary to the right which was granted is a property dispute, not a breach of the original contract." Kents Run, 323 B.R. at 417. Because Kents Run does not pursue this argument on appeal, we do not address it.

5

the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account all of the circumstances including any reasonable assurances; and (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with the standards of good faith and fair dealing.

Russell v. Ohio Outdoor Adver. Corp., 701 N.E.2d 417, 419 (Ohio Ct. App. 1997) (quoting Restatement (Second) of Contracts § 241).

Kents Run first contends that Midwest and Maysville have yet to "more particularly describe" their respective easements. As the District Court recognized, however, these unperformed obligations are conditioned under the terms of the parties' agreement upon the occurrence of events that have yet to occur. "There is a distinction in the law between failure of a condition and breach of a duty: 'Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.'" In re Columbia Gas, 50 F.3d at 241 (quoting Restatement (Second) of Contracts § 225(3) (1981)).

The terms of the parties' deed requires a further description of Midwest's easement *after* Midwest constructs the conveyor belt and storage facility. Maysville likewise must first construct its waterlines before added description becomes an obligation. It is undisputed that neither Midwest nor Maysville had developed the easements at the time of the bankruptcy petition. Moreover, Maysville and Midwest were under no contractual

duty or promise to create the contemplated improvements on the easements. Absent such a duty, failure to perform the contingent obligations of further description did not breach the contract. The same holds true for the claim that the contract is executory due to Midwest's obligation to burden any future conveyance with the Maysville easement– any breach of this obligation could not occur until Midwest conveys the property without notice of the easement, but Midwest had not conveyed the property, nor was it under an obligation to convey it, prior to the bankruptcy proceeding.

Kents Run concedes that the parties were under no duty to make the conditions precedent occur, see Appellant's Br. at 29, but it argues that a contract that is dependent upon the occurrence of an event, the happening of which is not the contractual obligation of any party, can still be an executory contract even though the triggering event had not occurred as of the date of the bankruptcy petition. Id. at 27. Kents Run cites, without elaboration, two bankruptcy court decisions holding that a contract for an option to purchase real estate or an unused right of first refusal on a real estate purchase can be executory. Id. (citing In re Kellstrom Indus., 286 B.R. 833 (Bankr. D. Del. 2002); In re Carlisle Homes, Inc., 103 B.R. 524 (Bankr. D.N.J. 1988)). We find, however, that the law as it applies in the present context is sufficiently clear: "if the remaining obligations in the contract are mere conditions, not duties, then the contract cannot be executory for purposes of § 365 because no material breach could occur." In re Columbia, 50 F.3d at 241. For the reasons stated, the first three unperformed obligations cited by Kents Run

7

were properly held to be mere conditions.[4]

Kents Run's final two claims of material breach are that Maysville failed to record a document regarding the portion of the Midwest easement that crosses over Frazier Quarry, and that Midwest failed to record a document in the chain of title to provide subsequent purchasers with notice of the Maysville easement. The District Court held that the parties' failure to create and record these documents did not render the contract executory because "these outstanding duties were not material." Kents Run, 323 B.R. at 419. The District Court determined that the 1993 deed was effective under Ohio law to create legally enforceable easements between the parties. To the extent that Midwest and Maysville have both lost a benefit under the contract insofar as the easements have yet to be made enforceable against subsequent purchasers, Maysville has expressed its readiness to execute the appropriate documents, the act of creating and filing those documents is ministerial, and there is no indication that either party failed to comply with the standards of good faith and fair dealing. The District Court thus concluded that the unperformed obligations do not amount to a material breach.

Having reviewed the record, we find no error in the District Court's analysis.

---

[4] In Judge Brody's view, the District Court was required to apply Ohio's five-factor Restatement test to the first three unperformed obligations cited by Kents Run, even though those obligations were contingent obligations. Nonetheless, Judge Brody agrees that a breach of the three unperformed obligations would not constitute a material breach under Ohio law and, therefore, the three obligations do not give rise to an executory contract under section 365.

Kents Run does not dispute that the parties' deed was sufficient under Ohio law to create and record the easements as between Midwest and Maysville. Rather, Kents Run takes issue with the District Court's application of the Restatement (Second) factors, set forth supra, in holding immaterial the failure to record documents needed to enforce the easements against subsequent purchasers. Kents Run argues in particular that the District Court erred in giving weight to Maysville's representation that it was prepared to record an appropriate document concerning the portion of the Midwest easement that crosses Frazier Quarry, noting that Maysville failed to make that representation prior to the bankruptcy proceeding. As noted, the petition date marks the time to determine materiality of unperformed obligations for purposes of § 365, In re Columbia Gas, 50 F.3d at 240, but here Maysville had no notice until the bankruptcy proceeding that Midwest believed the contract was breached by failure to record the easement document. Under the circumstances, Maysville's clear statement of its intention to file the necessary documents, which by all accounts is a ministerial task, was properly weighed against finding a material breach. Moreover, the District Court rightly observed that there was no conduct by either party to the 1993 contract reflecting a lack of good faith or fair dealing.

At bottom, "not every contract that appears executory because it has not been completely performed is executory for purposes of § 365." In re Columbia Gas, 50 F.3d at 244 n.20. We agree with the Bankruptcy Court and the District Court that the contract here is not executory merely because the parties failed to perform various, non-material obligations with respect to the easements conveyed. As such, assumption of the contract

was properly denied under § 365.[5]

## III.

For the reasons stated, we will affirm the District Court's judgment.

---

[5]Given our conclusion that the contract is not executory and cannot be assumed by the Trustee under § 365(a), we need not reach the question whether assignment of the contract would impermissibly expand the nature of the easement granted to Midwest.