[Cite as *Artistic Carpet Warehouse, Inc. v. King*, 2021-Ohio-849.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ARTISTIC CARPET
WAREHOUSE, INC.                    :

      Plaintiff-Appellant,       :

                                     No. 109638

      v.                          :

JAMIE KING, D.B.A., SHOP N PLAY,  :

      Defendant-Appellee.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** March 18, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-917801

---

### *Appearances:*

Weltman Weinberg & Reis Co., L.P.A., and Donald A. Mausar, *for appellant.*

Polk Kabat, L.L.P., Andrew A. Kabat, and Daniel M. Connell, *for appellee.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Plaintiff-appellant Artistic Carpet Warehouse ("Artistic") brings the instant appeal challenging the trial court's judgment granting summary judgment in favor of defendant-appellee, Jamie King d.b.a. Shop N Play ("King") in Artistic's

breach of contract action. Artistic argues that genuine issues of material fact existed that precluded judgment in King's favor, and that the trial court erred in granting King's motion for leave to file a motion for summary judgment. After a thorough review of the record and law, this court reverses and remands for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶ 2} Artistic is in the business of selling and installing flooring. King operates an amusement center for children, Shop N Play, at Southpark Mall in Strongsville, Ohio, where children can play while their parents shop in the mall. The instant matter involves a dispute between Artistic and King regarding flooring that was installed by Artistic at King's amusement center.

{¶ 3} According to King, the "product and installation services provided by Artistic were flawed from the start." Appellee's brief at 3. King brought the issues to Artistic's attention. The parties dispute when King was obligated to tender payment for the flooring and installation to Artistic. Artistic contends that payment was due at the time of installation. King, on the other hand, asserts that after she brought the issues with the flooring to Artistic's attention, the parties agreed that King "would only be responsible for providing full payment if and when Artistic corrected the product and installation issues." *Id.*

{¶ 4} According to King, Artistic never corrected the flooring issues at her amusement center. Artistic, on the other hand, maintains that it attempted to resolve the issues, but King refused to permit Artistic to complete the warranty work

and remediate the issues.  Nevertheless, King did not tender payment to Artistic for the flooring and installation.

{¶ 5} On July 5, 2019, Artistic filed a complaint against King alleging that King failed to pay for the "carpeting and/or flooring" that it purchased from Artistic on October 9, 2018.  Artistic alleged that it was entitled to collect $6,893.58 from King, and asserted that it was entitled to "pre-judgment and post-judgment statutory interest at 5% per annum from October 9, 2018."  Artistic attached an invoice, dated October 9, 2018, to its complaint.

{¶ 6} On August 20, 2019, King filed a motion for leave to file an answer and an answer.  The trial court granted King's motion for leave on September 5, 2019, and deemed King's answer filed as of August 21, 2019.

{¶ 7} In her answer, King asserted that she paid Artistic more than half of the balance for the flooring and carpeting installation.  King stated that "[King] and [Artistic] came to a payment agreement and agreed the remaining balance would be paid 'once transitions were fixed'[.]"  King alleged that Artistic failed to fix their mistakes.  King attached three invoices to her answer:  (1) an August 2018 invoice, (2) a September 13, 2018 invoice, and (3) an October 9, 2018 invoice.

{¶ 8} The trial court set a telephone case management conference for September 9, 2019, but this conference was cancelled.  The trial court set a telephone case management conference for October 17, 2019.  On October 11, 2019, the trial court converted the case management conference set for October 17 from a telephone conference to an in-person conference.

**{¶ 9}** The trial court held a case management conference on October 17, 2019. Both parties appeared. The parties agreed to a case management schedule. The trial court filed a journal entry on October 18, 2019, in which it set the matter for a bench trial on March 17, 2020, and set forth the deadlines for discovery, filing final pretrial statements, filing trial briefs, filing motions in limine, and submitting exhibits to the trial court before trial, including the curriculum vitae of any expert witnesses the parties intended to call at trial.

**{¶ 10}** King acted pro se from July 5, 2019, when Artistic filed its complaint, to December 13, 2019. On December 13, 2019, defense counsel filed a notice of appearance on King's behalf.

**{¶ 11}** On January 15, 2020, King filed a motion for summary judgment. Therein, King argued that she was entitled to summary judgment because Artistic "cannot demonstrate that it performed the subject contract, that it honored the warranty and that the condition precedent to payment, i.e. the resolution of deficiencies in the installation, had been satisfied. To the contrary, the undisputed evidence establishes that it is [Artistic], not [King] who had breached the parties' agreement." In support of her motion for summary judgment, King submitted (1) the deposition testimony of Artistic's sales employee, Lee Shurtleff, (2) a job invoice dated October 9, 2018, (3) an affidavit of Andrew Fronczek, an expert in the field of flooring products and product maintenance, (4) Fronczek's curriculum vitae, and (5) Fronczek's "Flooring Inspection Report."

{¶ 12} On January 22, 2020, King filed a motion for leave to file a summary judgment motion. Because the matter had already been set for trial, King was required to obtain leave of court to file her motion for summary judgment. *See* Civ.R. 56(A). Therein, King asserted that she "inadvertently failed to attach a Motion for Leave" at the time she filed her motion for summary judgment on January 15, 2020.

{¶ 13} On January 24, 2020, Artistic filed a brief in opposition to King's motion for leave and motion to strike King's motion for summary judgment. Therein, Artistic acknowledged that the trial court did not establish a deadline for filing dispositive motions during the October 17, 2019 case management conference or corresponding journal entry filed on October 18, 2019. However, Artistic argued that at the case management conference, "[King] was pro se appeared in person. It was agreed at that time there were material issues of fact in light of her answer and the pictures which she brought to the hearing and tried to produce at that time. As such it was agreed that no motion for summary judgment would be filed by either party[.]"

{¶ 14} Artistic argued that the trial court should not permit King's counsel to file a motion for summary judgment "since no motion for summary judgment planning duties were contemplated in the detailed [October 18, 2019 journal entry] and with such little time before the trial date." Finally, Artistic argued that King failed to file a motion for leave to file a motion for summary judgment as required by Civ.R. 56(B).

{¶ 15} King filed a reply brief in support of her motion for leave to file a motion for summary judgment on January 27, 2020. Therein, King argued that she filed her motion for leave, pursuant to Civ.R. 56(B), before Artistic filed its brief in opposition and motion to strike. King argued that the motion for summary judgment was filed less than one month after depositions were taken by King's newly retained counsel, before the January 17, 2020 discovery deadline, and two months before the scheduled trial date. Finally, King disputed Artistic's assertion that the parties reached an agreement during the case management conference that neither party would file a motion for summary judgment based on the existence of material issues of fact. King emphasized that Artistic failed to produce any evidence that such an agreement was, in fact, reached by the parties, and that the trial court's October 18, 2019 journal entry does not reference any such agreement.

{¶ 16} On January 31, 2020, the trial court granted King's motion for leave to file a motion for summary judgment. The trial court's journal entry provides, in relevant part, that King "shall have 28 days from the date of this entry to file a response. [Artistic's] reply shall be due 7 days thereafter."

{¶ 17} On February 18, 2020, Artistic filed a brief in opposition to King's motion for summary judgment. Therein, Artistic argued that based on the supporting affidavit of Artistic's owner and operator, Mark Mitchell, that "it is clear that triable issues of fact exist" that preclude judgment as a matter of law in King's favor.

{¶ 18} Mitchell's affidavit was executed on February 14, 2020. In his affidavit, Mitchell averred that Artistic ordered, delivered, and installed the flooring at King's business and that King "did not pay for the flooring upon installation as she was supposed to." Mitchell further averred, in relevant part:

> Affiant further states that [A]rtistic has always agreed to repair or replace the work product that they installed if it was caused by their installation crew as there was a 1 year warranty on labor.

> Affiant further states that [Artistic] did some repair work as directed by [King] but was still not paid.

> * * *

> Affiant further states that [King] has now refused to allow [Artistic] to remedy any problems with the flooring [Artistic] installed.

> Affiant further states that the product in dispute in terms of installation is the rubber mold and track that acts as a transition from one type of flooring to another. It was not part of the original product quote but was added on by [King] as some point. The rubber mold and track was 12% of the total job, invoice coming in at $985.00. [Artistic] agreed to reduce the balance [on] the outstanding amount of $985.00 but [King] rejected that proposal. The flooring products that are in dispute total the amount of $6,893.58.

{¶ 19} King filed a reply brief in support of her motion for summary judgment on February 18, 2020. Therein, King argued that Artistic's brief in opposition and Mitchell's supporting affidavit completely contradicted Mitchell's prior sworn deposition testimony on December 23, 2019. King did not address, nor present evidence refuting Mitchell's averment that Artistic attempted to remedy the flooring problems, but King did not permit Artistic to do so.

{¶ 20} On March 2, 2020, the trial court granted King's motion for summary judgment. It is from this judgment that Artistic filed the instant appeal on March 26, 2020.

{¶ 21} Artistic assigns two errors for review:

I. The trial court incorrectly granted summary judgment in favor of [King] where each element of [Civ.R. 56(C)] were not met and where genuine issues of material fact existed, where [King] was not entitled to judgment as a matter of law, and with the evidence construed most strongly in favor of [Artistic] reasonable minds could have come to a conclusion which was not adverse to [Artistic], all of which should have precluded summary judgment in [King's] favor.

II. The trial court erred when it granted [King's] leave to file its motion for summary judgment which included expert testimony, and where the case management order agreed to by the parties did not include provisions for expert report or expert report disclosure dates, and did not include a dispositive motion schedule, cut-of [sic] date, or ruling date, and doing do after the [d]iscovery period had expired thereby preventing [Artistic] from doing any additional discovery regarding the expert report used during the court's decision making process and appended to [King's] [m]otion for [s]ummary [j]udgment.

## II. Law and Analysis

## A. Motion for Summary Judgment

{¶ 22} In its first assignment of error, Artistic argues that the trial court erred in granting King's motion for summary judgment.

## 1. Standard of Review

{¶ 23} Summary judgment, governed by Civ.R. 56, provides for the expedited adjudication of matters where there is no material fact in dispute to be determined at trial. In order to obtain summary judgment, the moving party must show that "(1) there is no genuine issue of material fact; (2) the moving party is entitled to

judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994).

{¶ 24} The moving party has the initial responsibility of establishing that it is entitled to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "[I]f the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact." *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 16, citing *Dresher* at 293.

{¶ 25} Once the moving party demonstrates no material issue of fact exists for trial and the party is entitled to judgment, the burden shifts to the nonmoving party to put forth evidence demonstrating the existence of a material issue of fact that would preclude judgment as a matter of law. *Dresher* at *id.* In order to meet his burden, the nonmoving party may not merely rely upon allegations or denials in his or her pleadings, and must set forth specific facts, by affidavit or as otherwise provided in Civ.R. 56(E), demonstrating the existence of a genuine issue of material fact for trial. *See Houston v. Morales*, 8th Dist. Cuyahoga No. 106086, 2018-Ohio-1505, ¶ 7, citing *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197

(1996). Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Dresher* at *id.*

## 2. Breach of Contract

{¶ 26} To succeed on its breach of contract claim, Artistic must demonstrate "the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach." *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995).

{¶ 27} In granting King's motion for summary judgment, the trial court concluded, in relevant part,

> [King] has clearly articulated grounds for Summary Judgment. in response to [King's] clearly articulated grounds for Summary Judgment, [Artistic] has merely asserted general allegations and denials. [Artistic] has offered the self-serving affidavit of [Artistic's] owner and operator that does not even address the primary issues presented. While [Artistic] states the carpet was installed, it does not state it was installed properly. While [Artistic] states that some repairs were done, it does not state all repairs were done. [Artistic] does not refute that the proper installation of the rubber transitions was a condition precedent to payment, nor assert that this condition precedent was met.

Trial court's opinion and order at p. 3.

{¶ 28} After reviewing the record, we find that genuine issues of material fact exist that precluded judgment as a matter of law in King's favor.

{¶ 29} In support of her motion for summary judgment, King submitted (1) the deposition testimony of Artistic's sales employee, Lee Shurtleff, (2) a job invoice

dated October 9, 2018, (3) an affidavit of expert witness Andrew Fronczek, (4) Fronczek's curriculum vitae, and (5) Fronczek's "Flooring Inspection Report."

{¶ 30} The October 9, 2018 invoice attached to King's motion for summary judgment provided that "payment in full to be made upon completion on installation, unless otherwise noted." The invoice's "installation instructions" section contained handwritten notes that provided that a payment of $3,400 was due on October 12, 2018, and a payment of $3,493.58 was due on November 8, 2018, "once transitions are fixed."

{¶ 31} Shurtleff testified during his deposition that he made the handwritten notes in the October 9, 2018 job invoice's "installation instructions" section. Shurtleff testified that the installation instructions meant that King owed Artistic money once the transitions had been fixed. Shurtleff confirmed that the transitions had not been fixed at the time of his deposition on December 23, 2019.

{¶ 32} This evidence submitted by King, the October 9, 2018 job invoice and Shurtleff's deposition testimony, demonstrated that the parties agreed that King would tender final payment once the transitions were fixed.

{¶ 33} The October 9, 2018 job invoice submitted by King contained a one-year warranty provision that provided, "[a]ll labor and material is guaranteed for a period on one year from date of installation." Fronczek examined the flooring issues at King's amusement center and completed a report detailing his findings. Fronczek's report discusses aspects of improper installation by Artistic. Fronczek identified several flooring problems, and he opined that the problems were

"installation-related," rather than manufacturing-related problems or problems resulting from damage caused by third parties. Fronczek did not, however, expressly conclude that the entire carpet installed by Artistic needed to be replaced. Nor did Fronczek opine on the cost of remediating the flooring and installation issues.

{¶ 34} This evidence submitted by King, the October 9, 2018 job invoice, Shurtleff's deposition testimony, and Fronczek's report, demonstrates that the parties agreed that King would tender final payment once the transitions were fixed, that Artistic partially performed under the contract, and that a dispute exists regarding whether Artistic fulfilled its contractual obligations. The evidence does not, however, demonstrate that Artistic's partial performance relieved King of her contractual obligation in its entirety.

{¶ 35} King's motion for summary judgment and the supporting evidence failed to demonstrate that no genuine issues of material fact existed and that she was entitled to judgment as a matter of law. After reviewing the record, we find that genuine issues of material fact existed regarding (1) the materiality of Artistic's breach of the warranty provision, and whether Artistic's partial performance under the contract relieved King of her contractual obligation in its entirety, and (2) the damages, if any, to which King is entitled based on her claim that Artistic breached the warranty provision.

{¶ 36} The crux of King's summary judgment motion was that Artistic breached the warranty provision by failing to properly install the carpeting and that

King was not required to tender final payment until the transition pieces were fixed. In support of her position, King relied on Shurtleff's deposition testimony that King owed Artistic the final payment money once the transitions had been fixed.

{¶ 37} As an initial matter, we note that the transition pieces constituted a small fraction of the parties' total contract. Mitchell averred in his affidavit that the transition pieces, or rubber mold and track, were "12% of the total job" and that the cost of the transition pieces was $985. The total amount of the parties' contract was $8,093.58. Mitchell averred that aside from the dispute about the transition pieces, there was a dispute about other flooring products installed by Artistic totaling $6,893.58.

{¶ 38} Nevertheless, Artistic's breach of the parties' agreement that King would tender final payment once the transitions were fixed does not, as a matter of law, negate King's obligation to pay for the services and goods rendered by Artistic. It is undisputed that Artistic partially performed under the parties' contract. King has not demonstrated, much less argued, that the transitions being completed were essential to the contract as a whole, such that she would be relieved of her burden to pay for the nearly $7,000 in goods and services that were in addition to the cost of the transition pieces. In fact, Mitchell averred that the transition pieces were "not part of the original product quote" and that they were subsequently added into the project by King.

{¶ 39} "'A breach of one of several terms in a contract does not discharge the obligations of the parties to the contract, unless performance of that term is essential

to the purpose of the agreement.'" *491 N. Park Real Estate, L.L.C. v. Spice Partners, L.L.C.*, 10th Dist. Franklin No. 14AP-304, 2014-Ohio-5164, ¶ 22, quoting *Kersh v. Montgomery Dev. Ctr., Ohio Dept. of Mental Retardation & Dev. Disabilities*, 35 Ohio App.3d 61, 519 N.E.2d 665 (10th Dist.1987). "The determination of whether a party's breach of a contract was a 'material breach' is generally a question of fact." *O'Brien v. Ohio State Univ.*, 10th Dist. Franklin No. 06AP-946, 2007-Ohio-4833, ¶ 11, citing *Kersh* at 63.

{¶ 40} Based on the foregoing analysis, we find that a genuine issue of material fact exists regarding the materiality of Artistic's breach of the warranty provision and the parties' agreement that King would tender final payment once the transitions were fixed.

{¶ 41} We further find that a genuine issue of material fact exists regarding the amount of damages, if any, to which King is entitled on her claim that Artistic breached the warranty provision. King failed to produce any evidence of the cost to repair Artistic's allegedly improper installation. This, alone, automatically precludes any conclusion that King should be entirely relieved of her contractual obligations.

{¶ 42} In her appellate brief, King mischaracterizes the deposition testimony of Shurtleff and the conclusions reached in Fronczek's report. King asserts that Shurtleff "testified that portions of the indoor/outdoor carpeting were not properly installed." Appellee's brief at 11-12. The record reflects that after reviewing a single photograph of the AstroTurf that had been installed by Artistic, Shurtleff

acknowledged that the AstroTurf appeared to be cut. Shurtleff confirmed, "[t]hat's not proper installation." All of the other attempts to have Shurtleff confirm that the flooring had been improperly installed were unsuccessful. Shurtleff's deposition testimony did not conclusively establish that the entire carpet was installed improperly or that the carpet itself was defective. In fact, Shurtleff opined that the carpeting was not defectively installed.

{¶ 43} King also asserts that Fronczek "opined that the entire job was substandard and needs to be replaced." Appellee's brief at 7. Although Fronczek discusses aspects of improper installation, his report does not expressly conclude that the entire carpet installed by Artistic needs to be replaced. Furthermore, Fronczek does not opine on the cost to remediate the purportedly improper installation.

{¶ 44} Neither Shurtleff's nor Fronczek's deposition testimony undisputedly establishes that King is entitled to retain the goods and services, particularly the nearly $7,000 in flooring that is not related to the transition pieces, free of any obligation to pay based on the dispute about the warranty or completion of the transition pieces. Rather, the testimony demonstrates that a genuine issue of material fact exists regarding the damages, if any, to which King is entitled.

{¶ 45} Regarding the issues identified in Fronczek's expert report, Artistic concedes that it needs to perform warranty work to remedy these issues. Mitchell's affidavit, which Artistic submitted in opposing King's summary judgment motion, undisputedly established that Artistic attempted to remedy these issues, but King

refused to permit Artistic to do so. King's refusal to permit Artistic to correct the alleged defects under the terms of the warranty provision does not obviate the contract altogether — it demonstrates that a genuine issue of material fact exists regarding the issue of damages. King failed to produce any evidence, much less undisputed evidence, as to the cost to repair the allegedly improper installation of the carpet or to satisfactorily install the transition pieces in order to mitigate the amount owed under the terms of the contract.

{¶ 46} Based on the foregoing analysis, we find that a genuine issue of material fact exists regarding the amount of damages, if any, to which King is entitled.

{¶ 47} For all of the foregoing reasons, we find that the trial court erred in granting King's motion for summary judgment. King failed to meet her burden of demonstrating that no genuine issues of material fact remained for trial, such that she was entitled to judgment as a matter of law.

{¶ 48} Artistic's first assignment of error is sustained. Our resolution of Artistic's first assignment of error renders the second assignment of error moot.

{¶ 49} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

---

FRANK D. CELEBREZZE, JR., JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR